UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CINDY MOONSAMMY, *et al.*,

                                   Plaintiffs,                    23 Civ. 10491 (PAE)

                    -v-                                           OPINION & ORDER

DAVID C. BANKS, *et al.*,

                                   Defendants.

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Cindy and Kemraj Moonsammy (the "Moonsammys"), individually and on

behalf of their minor daughter, A.M., bring this action against the New York City Department of

Education and its Chancellor, David C. Banks (together, the "Department"), pursuant to the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and Article 89

of the New York State Education Law, N.Y. Educ. Law § 4401 *et seq.* A.M., who was age six

when the complaint was filed, has various neurological and physical disabilities, including

cerebral palsy, severe visual impairment, and a form of epilepsy known as Lennox-Gastaut

Syndrome.

In 2022, after concluding that the individualized education program ("IEP") developed

for A.M. by the Department was inadequate, the Moonsammys unilaterally enrolled A.M. in a

private school, the International Institute for the Brain ("iBrain").[1]  Their initial enrollment

---

[1] Although this fact is immaterial to this decision, the Court notes—as the Second Circuit and
other judges in this District have noted in like cases—that this case, on behalf of a student with
disabilities, was brought by the Brain Injury Rights Group, Ltd. ("BIRG"). BIRG's founder also
founded iBrain and has brought numerous cases on behalf of students seeking public funding
from the Department for iBrain tuition and related services. *See, e.g., de Paulino v. N.Y.C. Dep't
of Educ.*, 959 F.3d 519, 528–29 (2d Cir. 2020) (noting "unusual set of facts" in cases brought by
BIRG on behalf of students at iBrain); *de Paulino v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 1865,
2023 WL 1433665, at *1 n.1 (S.D.N.Y. Feb. 1, 2023) (same); *Ferreira v. N.Y.C. Dep't of Educ.*,

contract with iBrain was keyed to the parents' seeking "public funding," including by litigating against the Department, and materially suspended "tuition payment obligations" "until a final determination/decision is issued by an administrative judge, agency, or appellate court." Dkt. 16 at 348–49 ("administrative record" or "AR"). Around the same time, the Moonsammys entered into a contract with Sisters Travel and Transportation Services, LLC ("Sisters"), a specialized transportation service, for A.M.'s transportation to and from iBrain. It, too, suspended payment obligations "until an administrative or judicial decision is made." *Id.* at 340. The Moonsammys thereafter filed a series of lawsuits in this Court, seeking orders directing the Department to make payments directly —and "immediately"—to iBrain and Sisters.[2]

In this action, the Moonsammys seek review of a portion of a July 31, 2023 administrative decision of a State Review Officer ("SRO").[3] Reversing in part the determination of an Impartial Hearing Officer ("IHO"), the SRO found that the Department had failed to furnish a free appropriate public education ("FAPE") to A.M. for the 2020–21, 2021–22, and 2022–23 school years; that iBrain was an appropriate unilateral placement; and that the

---

Nos. 19 Civ. 2937, 2020 WL 1158532, at *2 n.1 (S.D.N.Y. Mar. 6, 2020) (describing circumstances giving rise to certain cases brought by BIRG as "curious," although "ultimately irrelevant" to court's decision).

[2] *Moonsammy et al. v. Banks et al.*, 24 Civ. 2616 (PAE), Dkt. 24 at 15; *see also, e.g.*, 24 Civ. 2616 (PAE), Dkt. 45 at 5–6 (seeking immediate payment of $475,930 to iBrain and Sisters, for tuition and transportation, respectively, for 2023–24 school year); 24 Civ. 2616 (PAE), Dkt. 45 at 6 (seeking immediate payment of $540,210 to iBrain and Sisters for tuition and transportation, respectively, for the 2024–25 school year); 24 Civ. 2616 (PAE), Dkt. 19 at 14 (requesting a preliminary injunction requiring Department to make "immediate" payment); *Moonsammy et al. v. Banks et al.*, 24 Civ. 5151 (PAE), Dkt. 7, at 4 (requesting "an order requiring the DOE to fund A.M.'s program/placement at iBRAIN"); 24 Civ. 5151 (PAE), Dkt. 25, at 9 (seeking "immediate judicial intervention"); *Moonsammy et al. v. Banks et al.*, 24 Civ. 6483 (PAE), Dkt. 5, at 4 (seeking "funding as direct payment to iBRAIN and to [Sisters]").

[3] The Department did not cross-appeal.

Moonsammys were entitled to public funding for A.M.'s private school enrollment. Those findings are not at issue here. The Moonsammys, instead, contend that the SRO erred in the remedy he set for the denial of a FAPE and in denying their request for a publicly funded independent educational evaluation ("IEE") for A.M. Specifically, the Moonsammys challenge the SRO's decisions (1) awarding reimbursement to the parents, rather than ordering the Department to directly pay iBrain and Sisters for, respectively, the costs of A.M.'s tuition and transportation services, upon proof of A.M.'s attendance at iBrain; (2) declining to make part of the reimbursement award funding for one-to-one nursing services at iBrain; and (3) denying their request for an IEE at public expense. The parties have cross-moved for summary judgment.

For the reasons that follow, the Court agrees with the Moonsammys that the SRO erred in denying their request for a publicly funded IEE and grants summary judgment to them on their IEE claim. The Court, however, denies summary judgment to both parties on the Moonsammys' claims for direct payment and one-to-one nursing services. The Court instead remands these matters to the SRO. On the direct payment issue, the SRO is to consider the equities relevant to the choice between (1) an order requiring the Department to directly pay iBrain and Sisters for, respectively, tuition and transportation services and (2) an order requiring the Department to reimburse the Moonsammys for their expenditures for such services, and to explain which option the equities, including the Moonsammys' financial circumstances, favor. On the nursing services issue, the SRO is to consider whether, under his order dated July 31, 2023, the Department has an obligation to fund one-to-one school nursing services for A.M. and the scope of any such obligation.

## I.  Background

### A.  Facts[4]

#### 1.  A.M.'s Background

A.M. is a "child with a disability" under the IDEA.  20 U.S.C. §1401(3)(A)(i) (listing covered disabilities).  Her neurological and physical disabilities include cerebral palsy, severe visual impairment, and a form of epilepsy known as Lennox-Gastaut Syndrome, which causes seizures three to four times a day.  AR 20, 37.  A.M. is non-ambulatory and non-verbal.  *Id.* at 37.  She requires one-to-one assistance to participate in classroom activity and to attend to her basic needs.  *Id.*

#### 2.  A.M.'s Relevant Educational History

A.M. was scheduled to start kindergarten in 2022, for what was to be her first year in school.  *See id.* at 626–28.  Her parents had declined to send her to preschool due to the COVID-19 pandemic and their concerns about the ability of local schools to address A.M.'s complex needs, made more acute by hip surgery and a four-month hospital stay in late 2021.  *See id.* at 788.

In August 2021, A.M.'s Committee on Special Education ("CSE") provided the Moonsammys with an IEP for A.M.'s first year of school.  It recommended a class with 12 students, one teacher, and three teaching assistants (a "12:1:3 classroom"), but did not provide for a one-to-one paraprofessional or nurse.  *Id.* at 189, 195.  In March 2022, the Moonsammys

---

[4] The Court's account of the underlying facts is drawn from the parties' submissions in support of and in opposition to the Moonsammys' motion for summary judgment and the Department's cross-motion for summary judgment and the administrative record from the proceedings before the state administrative officers and attached exhibits, Dkt. 16, including, *inter alia*, the transcript from the hearing before the IHO; the written decision of the IHO; and the written decision of the SRO.  For exhibits and briefs with both internal and Bates-stamped numbering, the Court cites the Bates-stamped page numbers.

4

notified the Department that they were rejecting the Department's proposed placement as inadequate to meet A.M.'s needs and that they were enrolling A.M. at iBrain. *Id.* at 194–95.

In or around May 2022, A.M. began kindergarten at iBrain for the 2022-23 extended school year. *Id.* at 543. On May 27, 2022, A.M.'s CSE convened again, and adopted substantially similar recommendations to the preceding IEP, placing A.M. in a 12:1:4 classroom. *Id.* at 43, 264. This IEP concluded that A.M. "require[d] a 1:1 nurse at all times to tend to her physical needs and ensure her medical safety, seizure management, and G-tube feed." *Id.* at 233. However, it declined to recommend one-to-one nursing services because the Department's staff did not have the required paperwork. *Id.* at 264. The Moonsammys decided to keep A.M. at iBrain, where she has remained since. *Id.* at 357.

**B. Administrative Proceedings**

On October 18, 2022, the Moonsammys filed a due process complaint with the Department, in which they sought an order directing the Department to fund the costs of A.M.'s enrollment at iBrain and related services. *Id.* at 106 (the "due process complaint"). The due process complaint alleged that several aspects of A.M.'s IEPs had left her without a FAPE since August 2020, including her placement in a 12:1:4 classroom, *id.* at 111–12, limited wheelchair access at the proposed school location, *id.* at 112–13, and the failure to recommend a one-to-one nurse for A.M., *id.* at 115. The due process complaint also alleged that A.M.'s unilateral placement at iBrain was appropriate to address her "academic, physical, and social/emotional needs." *Id.* at 116. The Moonsammys sought an order declaring that the Department had denied A.M. a FAPE and that iBrain was an appropriate placement for A.M.; requiring the Department to pay A.M.'s tuition and transportation expenses directly to iBrain and Sisters, respectively; and requiring the Department to fund an IEE for A.M. *Id.* at 117.

5

On April 27, 2023, after two days of hearings and live testimony from five witnesses, IHO Philip P. Sturges held that the Department did not have an obligation to fund A.M.'s private school placement at iBrain. *See id.* at 38, 48. The IHO applied the *Burlington-Carter* framework. *Id.* at 44.[5] Under that framework, parents who have unilaterally placed their child in private school are "entitled to reimbursement if (1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement is appropriate to meet the child's needs, and (3) equitable considerations favor reimbursement." *See E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 451–55 (2d Cir. 2014).

IHO Sturges's finding in favor of the Department on the first prong—to wit, that the Department had offered A.M. a FAPE—was decisive under the *Burlington-Carter* framework. AR 44–46. In light of that finding, IHO Sturges noted, "it [wa]s not necessary" to reach the second and third prongs, but he did so "to provide the parties with a complete set of findings" in the event of appellate reversal on the first prong. *Id.* at 46–47. As to the second prong, IHO Sturges would have held iBrain "an appropriate placement for [A.M.]"; and as to the third, IHO Sturges would have found that equitable considerations warranted a 25% reduction in the tuition reimbursement award for the 2022–2023 school year. *Id.* at 47. Had he found that the Department denied A.M. a FAPE, IHO Sturges stated, his award would have directed the Department to partially reimburse the parents. He would not have awarded "direct payment" of money to iBrain and A.M.'s other service providers. *Id.*

As to their request for an IEE, IHO Sturges found that, by expressing disagreement in the due process complaint with an evaluation conducted by the Department on March 4, 2022, the

---

[5] *See Sch. Comm. of the Town of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985); *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993).

Moonsammys had taken "sufficient" action "to warrant the requested IEE." *Id.* at 48. He observed that "while the record d[id] not establish that the Parents requested an IEE from the DOE prior to the request contained in the DPC, the DOE did not raise any specific objections to an IEE at the hearing." *Id.* The IHO ordered the Department to fund a neuropsychological IEE by an evaluator selected by the Moonsammys. *Id.*

Both parties appealed. The Moonsammys argued that the Department had deprived A.M. of a FAPE and that IHO Sturges therefore erred in denying them funding for A.M.'s placement at iBrain. *Id.* at 60–70. They further argued that, as a remedy for denying A.M. a FAPE, they were entitled to "direct payment" to iBrain and Sisters. *Id.* at 68. The Department argued that equitable considerations warranted a 100% reduction in any reimbursement award "because the parents failed to cooperate with the CSE process," *id.* at 88, but it did not elaborate on that contention. In the alternative, it argued, any reimbursement awarded to the parents should be keyed to "[A.M.'s] actual attendance at school" and be made "contingent on proof of receipt of services," because the Moonsammys were "not entitled to public funding or services not received." *Id.* at 89. The Department also argued that IHO Sturges had erred in granting the Moonsammys' request for an IEE at public expense. *Id.*

On July 31, 2023, SRO Justyn P. Bates issued a decision sustaining both appeals in part. *Id.* at 12. He reversed the IHO's determination on the first *Burlington-Carter* prong, holding that the Department, by failing "to consider [one-to-one] nurse services in light of" A.M.'s "documented medical needs," had deprived A.M. of a FAPE. *Id.* at 26. He also found for the Moonsammys on the second prong. The Department's failure to "challenge the IHO's determination" that iBrain was an appropriate unilateral placement for A.M., the SRO held, left that determination "final and binding on the parties." *Id.* at 27. As to the third, SRO Bates

disagreed with the IHO's finding that the parents' "predetermination" to send A.M. to iBrain warranted a reduction in the amount of tuition reimbursement. *Id.* at 28–29. As to the remedy, SRO Bates, agreeing with the IHO, found direct payment of iBrain and Sisters "not an appropriate form of relief." *Id.* at 32. He directed the Department to reimburse the Moonsammys for "iBrain tuition costs for the 2021–22 and 2022–23 school years" and "transportation costs to and from iBrain for the 2022–23 school year." *Id.* at 34.

On the Department's cross-appeal, SRO Bates held that "the IHO erred in his decision to grant the parents' request for an IEE at public expense." *Id.* In his view, the Moonsammys had failed to follow "the process contemplated by the IDEA and its implementing regulations." *Id.* at 33. By "ma[king] their request for an IEE in the due process complaint notice in the first instance," the SRO opined, the Moonsammys had deprived the Department of an "opportunity to engage with" them "outside of due process litigation." *Id.* On this basis, he concluded that the Department was not required to fund an IEE. *Id.* at 24.

### C. Procedural History

On November 30, 2023, having exhausted the administrative process, the Moonsammys filed a complaint in this Court, seeking review of aspects of SRO Bates's order. Dkt. 1 (Complaint). They challenged the SRO's decisions (1) ordering the Department to reimburse the parents for their expenditures for A.M.'s tuition and transportation, rather than ordering it to directly pay iBrain and Sisters; (2) declining to award funding for one-to-one nursing services at iBrain; and (3) denying their request for an IEE at public expense. The Department filed an Answer but did not cross-appeal. Dkt. 9.

On April 17, 2024, the Moonsammys filed a motion for summary judgment, Dkt. 20, and a memorandum of law in support, Dkt. 21 ("Pls.' Br."). On June 6, 2024, the Department filed a

cross-motion for summary judgment and an opposition to the Moonsammys' motion, Dkt. 24, along with a memorandum of law in support, Dkt. 25 ("Defs.' Br."). On July 12, 2024, the Moonsammys filed an opposition to the Department's motion and a reply to the Department's opposition, Dkt. 29 ("Pls.' Reply Br."). On July 23, 2024, the Department filed a reply to the Moonsammys' opposition. Dkt. 30 ("Defs.' Reply Br.").

## II.    Applicable Legal Standards

### A.    Legal Framework

The IDEA offers federal funds to States in exchange for a commitment to provide a FAPE to all children with disabilities. 20 U.S.C. § 1412(a)(1)(A); *see also Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017). A FAPE should "emphasize[ ] special education and related services designed to meet the unique needs" of a child with a disability and "prepare" the child "for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

To accomplish that purpose, the local educational agency must develop an IEP for each child that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311 (1988); *see* 20 U.S.C. § 1414(d)(1)(A); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 415 (2d Cir. 2009).[6] The IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew*, 580 U.S. at 399. It must be

---

[6] "Local educational agency" means "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city . . . ." 20 U.S.C. § 1401(19)(A).

calculated to provide an "appropriate education, not one that provides everything that might be thought desirable by loving parents." *Navarro Carrillo v. N.Y.C. Dep't of Educ.*, No. 21-Civ.-2639, 2023 WL 3162127, at *3 (2d Cir. May 1, 2023) (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 127 (2d Cir. 1998)).

When a parent believes that the State has failed to offer her child a FAPE, the parent may file a due process complaint and attend a hearing before an IHO. 20 U.S.C. § 1415(b)(6); N.Y. Educ. Law § 4404(1). Such a complaint initiates an "administrative challenge unrelated to the concept of constitutional due process." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). If the parent's concerns are not resolved at a "[p]reliminary meeting," 20 U.S.C. § 1415(f)(1)(B)(i), the matter proceeds to a hearing before the IHO, *id.* § 1415(f)(1)(A); *see also id.* § 1415(f)(3)(A)(i), who must "determin[e] . . . whether the child received a [FAPE]," *id.* § 1415(f)(3)(E)(i); *see also* N.Y. Educ. Law § 4404(1)(a). The IHO's decision is appealable by either party to an SRO, who must "conduct an impartial review" of the IHO's "findings and decision." 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(2). "Any party aggrieved by" the SRO's decision "ha[s] the right" to seek judicial review by filing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A); *see also* N.Y. Educ. Law § 4404(3)(a).

**B.    Standard of Review**

Summary judgment in the context of an IDEA case "involves more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions." *R.E.*, 694 F.3d at 184 (quoting *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009)). Although the "district court must base its decision on the preponderance of the evidence," it ultimately must "give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience

necessary to resolve persistent and difficult questions of educational policy." *A.C.*, 553 F.3d at 171 (cleaned up).

When the decisions of an IHO and an SRO conflict, the Court should generally defer to the SRO's decision as the "final decision of the state authorities," *R.E.*, 694 F.3d at 189 (quoting *A.C.*, 553 F.3d at 171), particularly "when the state officer's review 'has been thorough and careful,'" *id.* at 184. But where "the district court appropriately concludes that the SRO's determinations are insufficiently reasoned to merit that deference, and in particular where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court, having in its turn found the SRO's conclusions unpersuasive even after appropriate deference is paid, to consider the IHO's analysis, which is also informed by greater educational expertise than that of judges." *Id.* at 189 (citing *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir. 2012)). The district court "may remand a proceeding when it needs further clarification or does not have sufficient guidance from the administrative agencies." *Hidalgo v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 98, 2021 WL 2827037, at *5 (S.D.N.Y. July 7, 2021).

## III.    Discussion

The Moonsammys argue that the IDEA required SRO Bates (1) to order the Department to make direct payments to iBrain and Sisters, rather than to reimburse the Moonsammys for the cost of services these entities provided to A.M.; (2) to award funding for one-to-one school nurse services; and (3) to grant a publicly funded IEE. The Department disagrees. The Court considers each issue in turn.

**A. Direct Payment Remedy**

The Moonsammys first challenge SRO Bates's choice of remedy for the denial of a FAPE. The SRO ordered that the Department reimburse the Moonsammys for the cost of A.M.'s private school enrollment at iBrain and of the transportation services provided by Sisters, upon proof of A.M.'s attendance at iBrain. AR 35. The Moonsammys had sought an order directing the Department to pay these entities directly. *Id.* at 31. The Moonsammys argue here, based on the evidence in the administrative proceedings,[7] it was error not to award direct payment as the remedy; that an award of parental reimbursement is "inconsistent" with the IDEA and Second Circuit case law; and that direct payment is required even where the parents have not shown that requiring them to first pay the school (and other providers) and then be reimbursed by the Department would pose a hardship for them. Pls.' Br. at 14–19; *see* Pls.' Reply Br. at 8–14.

The Department counters that the Moonsammys misread the case law. It supports at most, the Department contends, that a direct payment remedy is available only in "appropriate circumstances"—with the relevant one here being a showing by the parents of a financial inability to pay the school or other service provider before obtaining reimbursement. Defs.' Br. at 8. Noting the SRO's finding that the Moonsammys did not adduce any evidence of a financial inability to make the payments at issue here, the Department argues that the SRO did not err in denying their request for direct payment. *Id.* at 1, 9.

---

[7] The Moonsammys declined to supplement the administrative record "receive[d]" by this Court. 20 U.S.C. § 1415(i)(2)(C)(i). And they sought a waiver of the requirement to file a statement of facts under Local Rule 56.1, on the grounds that their summary judgment motion is "in substance an appeal from" SRO Bates's determination; that "the inquiry here is not whether there are disputed issues of fact; and that the motion "will be based solely on the administrative record." Dkt. 12 at 2. The Court granted that waiver. Dkt. 13 at 2. Because neither party sought to supplement the administrative record, *see* 20 U.S.C. § 1415(i)(2)(C)(ii), the Court bases its decision solely on "the records of the administrative proceedings," *id.* § 1415(i)(2)(C)(i).

A threshold question is the standard of review. The Moonsammys argue that deference is not due to the administrative hearing officers on this issue because the scope of authority to award direct payments is an "inherently" legal question that involves interpretation of "the federal statute and its requirements." *Id.* at 10 (citations omitted). On that question, which turns on the meaning of statutory provisions, the Court agrees that deference is not warranted. *See, e.g., Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005) ("[S]tate hearing officers are not more experienced or expert than courts in interpreting federal statutes . . . and, therefore, deference is not warranted." (citations omitted)).

The Court "begins, as always, with the statutory language at issue." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 167 (2017). Section 1412(a)(10)(C), enacted as part of the 1997 amendments to IDEA, addresses "[p]ayment for education of children enrolled in private schools without consent of or referral by the public agency."[8] Pub. L. No. 105-17, 111 Stat. 37 (1997) (codified at 20 U.S.C. § 1412(a)(10)(C)). Its first subsection provides that, "[i]n general," a local educational agency does not have an obligation to "pay for the cost of education" at a private school "if the agency made a free appropriate public education available to the child and the parents elected to place the child in such private school." 20 U.S.C. § 1412(a)(10)(C)(i). The second subsection addresses "[r]eimbursement for private school placement." *Id.* § 1412(a)(10)(C)(ii). It authorizes "a court or a hearing officer" to "require the agency to *reimburse the parents* for the cost of" private school enrollment upon a "find[ing]" "that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." *Id.* (emphasis added). The remaining two subsections set out

---

[8] In setting out the local educational agency's obligations, the IDEA treats this group of children as distinct from "children placed in placed in, or referred to, private schools by public agencies." *Id.* § 1412(a)(10)(B).

the circumstances under which "[t]he cost of reimbursement described in clause (ii) may be reduced or denied." *See id.* §§ 1412(a)(10)(C)(iii)–(iv). For example, "a judicial finding of unreasonableness with respect to actions taken by the parents" permits the agency to "reduce[] or den[y]" the "cost of reimbursement." *Id.* § 1412(a)(10)(C)(iii)(III).

The term "reimbursement" is recurrent in Section 1412(a)(10)(C).[9] The use of this term reinforces what is express in § 1412(a)(10)(C)(ii): that the statute authorizes a state administrative hearing officer to order a local educational agency, like the Department, that has denied a child a FAPE to pay the parents of the child for the costs of private school enrollment such as tuition and transportation. And the provision textually presupposes that the parents had incurred those costs. The term "reimburse" ordinarily means "to pay back (an equivalent for something taken, lost, or expended) to someone" or "to make restoration or payment of an equivalent to." Webster's Third New International Dictionary 1914 (1993); *see* Black's Law Dictionary 1287 (6th ed. 1990*) (*defining "reimburse" as [t]o pay back, to make restoration, to repay that expended; to indemnify, or make whole"). "Reimbursement" likewise refers to the "the action of reimbursing." Webster's Third New International Dictionary 1914 (1993). Section 1412(a)(10)(C) is thus textually clear that "a court or a hearing officer" may order

---

[9] The IDEA's implementing regulations speak in like terms. 34 C.F.R. § 300.148 governs the "[p]lacement of children by parents when FAPE is at issue." Subsection (a) provides that the "the question of financial reimbursement" is subject to the statutory due process procedures. "Reimbursement for private school placement" is addressed in subsection (c), which provides:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary school, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate.

*Id.* § 300.148(c).

14

"reimbursement"—repayment—to "the parents for the cost of" "enrollment" of "the[ir] child in a private elementary school or secondary school," where the officer finds that the agency had denied the child a FAPE. 20 U.S.C. § 1412(a)(10)(C).

The Supreme Court's and the Second Circuit's discussions of the IDEA reinforce the centrality of the reimbursement remedy. The Court has explained that the "IDEA authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE and the private-school placement is appropriate . . . ." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009); *Burlington*, 471 U.S. at 369. The Second Circuit has stated, "If a state fails in its obligation to provide a free appropriate public education to a [child with a disability], the parents may enroll the child in a private school and seek *retroactive reimbursement* for the cost of the private school from the state." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015) (quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006)) (emphasis added).

The IDEA, in contrast, does not explicitly refer to a remedy consisting of direct payment by the educational agency to the private school or other service provider. Finding this omission not to be "dispositive," however, a growing body of case law in this District has held that a direct payment remedy can be rooted not in § 1412(a)(10)(C) but in the IDEA's separate judicial review provision, § 1415(i)(2). *Mr. & Mrs. A. ex rel. D.A. v. N.Y.C. Dep't of Educ.*, 769 F. Supp. 2d 403, 428 (S.D.N.Y. 2011) (Gardephe, J.); *see also, e.g., A.R. ex rel. F.P. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 4493, 2013 WL 5312537, at *11 (S.D.N.Y. Sept. 23, 2013) (Crotty, J.). Section 1415(i)(2)(C)(iii) authorizes "the court," "basing its decision on the preponderance of the evidence," to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). This provision, courts in this District have held, permits a direct payment

15

remedy because, where parents lack the means to front the tuition and related costs of private

school, such remedy vindicates the "IDEA's universal guarantee of a free, appropriate public

education to all children with disabilities, regardless of means," even though the Act does not

"make explicit mention of [this] particular remedy." *Mr. & Mrs. A.*, 769 F. Supp. 2d at 403, 423

(internal quotation marks omitted). Courts in this District have ordered the direct payment

remedy in several recent cases, all involving requests for payment to iBrain. *Ferreira v. N.Y.C.*

*Dep't of Educ.*, No. 20 Civ. 9849, 2023 WL 2499261, at *2, *9–10 (S.D.N.Y. Mar. 14, 2023)

(Torres, J.); *Maysonet v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 1685, 2023 WL 2537851, at *1, *5–

6 (S.D.N.Y. Mar. 16, 2023) (Schofield, J.); *Cohen v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 6260,

2023 WL 6258147, at *6 (S.D.N.Y. Sept. 26, 2023) (Vyskocil, J.); *Mondano v. Banks*, No. 22

Civ. 7519, 2024 WL 1363583, at *12 (S.D.N.Y. Mar. 30, 2024) (Cronan, J.); *Erde v. Banks*, No.

21 Civ. 9285, 2022 WL 18461297, at *9–10 (S.D.N.Y. Dec. 28, 2022), *report and*

*recommendation adopted*, No. 21 Civ. 9285, 2023 WL 373156 (S.D.N.Y. Jan. 24, 2023)

(Broderick, J.).

The fountainhead for this line of cases is Judge Gardephe's decision in *Mr. & Mrs. A. ex*

*rel. D.A. v. New York City Department of Education*, 769 F. Supp. 2d 403 (S.D.N.Y. 2011). He

held that the Department had denied the child a FAPE; that the private school in which the

child's parents had unilaterally enrolled him was an "appropriate" placement; and that the

equities favored an award of the costs of private school tuition. *See id.* at 417–20 (applying

*Burlington-Carter* framework). Noting the evidence that the parents "lack[ed] the financial

resources" to pay and thereafter seek reimbursement of private school tuition, which "dwarf[ed]"

their annual income, *id.* at 427–28, 430, Judge Gardephe found that it would be "entirely

inconsistent with IDEA's statutory purpose" to limit the parents to a reimbursement remedy in

16

these circumstances, *id.* at 428.  Although legal "research ha[d] disclosed no federal decision holding that IDEA authorizes courts to order retroactive direct tuition payments to a private school," *id.* at 424, Judge Gardephe reasoned that the "IDEA's statutory purpose" and the Supreme Court's decision in *Forest Grove* supported remedial authority broader than the "statute's explicit remedy of reimbursement," *id.* at 428–29.[10]  Moreover, Judge Gardephe explained, "[t]the theme of concern for children from low-income families that runs through IDEA and its legislative history . . . counsels caution in adopting an interpretation of § 1415(i)(2)(C)(iii) that would limit a private school tuition remedy to those who have the means to pay the tuition in the first instance." *Id.* at 421.  Invoking a court's "'broad discretion' to 'grant such relief as . . . is appropriate'" under § 1415(i)(2)(C)(iii)—the judicial review provision—Judge Gardephe found that a district court could award "retroactive direct tuition payment relief" "[w]here . . . parents lack the financial resources to front the costs of private school tuition." *Id.* at 427–28.

---

[10] In *Forest Grove*, 557 U.S. 230, the Supreme Court considered the effect of the 1997 amendments to the IDEA on the reimbursement remedy recognized in *School Committee of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359 (1985), and *Florence County School District Four v. Carter*, 510 U.S. 7 (1993).  The amendments had not "change[d] the text" of § 1415(i)(2)(C)(iii), to which *Burlington* and *Carter* had sourced the reimbursement remedy.  *Forest Grove*, 557 U.S. at 239.  The Supreme Court held that Congress, in amending the IDEA in 1997 to add § 1412(a)(10)(C), did not "abrogate[] *sub silentio*" its decisions recognizing the availability of the "reimbursement" remedy "without regard to the child's prior receipt of services." *Id.* at 243.  Recognizing that conditions imposed on States by Spending Clause legislation, like the IDEA, must "be stated unambiguously," the Supreme Court found that that *Burlington* and *Carter* had put States "on notice" that the "IDEA authorizes courts to order reimbursement of the costs of private special-education services in appropriate circumstances." *Id.* at 246 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).  In *Mr. & Mrs. A.*, Judge Gardephe read *Forest Grove* to "foreclose[]" the Department's argument that the 1997 amendments to IDEA implicitly precluded a direct payment remedy.  769 F. Supp. 2d at 428–29.

Two years later, in *A.R. ex rel. F.P. v. New York City Department of Education*, No. 12 Civ. 4493, 2013 WL 5312537 (S.D.N.Y. Sept. 23, 2013), Judge Crotty ordered the same relief, citing *Mr. & Mrs. A.*'s holding "that a court's broad discretion to grant such relief as is appropriate under 20 U.S.C. § 1415(i)(2)(C)(iii) includes the power, in a proper case, to award retroactive direct payment of private school tuition," *id.* at *11 (cleaned up) (quoting 769 F. Supp. 2d at 427). He "credit[ed] the Plaintiff[']s undisputed evidence that she could not afford to pay [private school] tuition," which included a declaration and an exhibit "indicating an annual income of less than $7,000 and lack of child support from the Student's father." *Id.* Based on such evidence, Judge Crotty "exercise[d] [his] discretion" to order direct payment to the private school. *Id.*

The following year, the Second Circuit, in the context of a discussion of Article III standing, noted the above two cases had "recently" recognized a direct payment remedy under the IDEA. *E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 452 (2d Cir. 2014) (citing *Mr. & Mrs. A.* and *A.R.*). The Circuit stated: "[A] growing number of our district courts have recently held that the IDEA permits courts, in appropriate cases, not only to order 'reimbursement' of tuition costs to parents, but also to order retrospective payment of tuition directly to the private school where a parent has unilaterally enrolled her child." *Id.* Moreover, the Circuit explained that "where the equities call for it, direct payment fits comfortably within the *Burlington-Carter* framework" because "direct payment to the private school . . . 'merely requires [the educational agency] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP.'" *Id.* at 453–54 (quoting *Burlington*, 471 U.S. at 370–71). The Circuit held that the theoretical availability of a direct payment remedy supported the plaintiff's standing—by showing her claimed injury to be judicially redressable—while

emphasizing that its holding "d[id] not mean that she is entitled to the relief she seeks," namely, direct payment. *Id.* at 461. Rather, the Circuit stated, the "district court may consider many factors" in determining the parents' entitlement to direct payment, listed non-exhaustively:

> whether plaintiff's unilateral withdrawal of her child from the public school was justified, whether plaintiff provided the Department with adequate notice of the withdrawal, whether the amount of private-school tuition was reasonable, whether plaintiff should have availed herself of need-based scholarships or other financial aid from the private school, and whether there was any fraud or collusion in generating (or inflating) the tuition to be charged to the Department, or whether the arrangement with the school was fraudulent or collusive in any other respect.

*Id.* The Circuit remanded the case to the district court to address the merits of the dispute, noting that the district court in turn "might" "perhaps more profitably, remand the matter" to enable state administrative hearing officers to undertake "a complete reexamination in light of [the Second Circuit's] instructions." *Id.* at 463.

More recently, in several cases, courts in this District, overturning administrative hearing officers who had awarded a reimbursement remedy, have ordered direct payment to iBrain even though proof had not been adduced that the parents were "unable to pay for the services for which they seek payment." *Ferreira*, 2023 WL 2499261, at *10. These cases have noted that, although the parents in the preceding cases such as *A.R.* had demonstrated financial hardship, the decisions there had not held that such a showing was required as a matter of law. *See id.* ("Although the court in *A.R.* did consider the plaintiff's inability to pay, the court did not require such proof."); *Cohen*, 2023 WL 6258147, at *5 ("[I]n each of [the prior cases awarding direct payment], the parent plaintiffs demonstrated financial hardship. However, none of the courts directly held that such a showing of financial hardship was a necessary prerequisite."). Holding that a showing of financial hardship is unnecessary, these courts have exercised their equitable authority under the judicial review provision (§ 1415(i)(2)(C)(iii)) to order the Department to

directly pay iBrain tuition and for related services. *See Ferreira*, 2023 WL 2499261, at \*10
("[C]ourts have broad discretion to grant appropriate relief, including retrospective direct
payment of private school tuition. . . . The Court concludes, based on the factual findings of both
the IHO and SRO, that direct retrospective payment is an appropriate remedy here."); *Cohen*,
2023 WL 6258147, at \*5 ("[T]he Court finds that Plaintiffs are not required to establish financial
hardship in order to seek direct retrospective payment to iBRAIN for their son's 2018–2019
school year. . . . To require parents to fund their children's education in the first instance, unless
they demonstrate an inability to pay—as the SRO did here—skews the equities underlying the
IDEA and cases applying that law."); *Mondano*, 2024 WL 1363583, at \*12 ("The Court . . . finds
that the SRO's determination, inasmuch as it hinged entirely on the absence of the evidence
concerning Mondano's financial ability to pay for the tuition upfront, was in error." (citing
*Cohen* and *Ferreira*)).

In *Maysonet*, 2023 WL 2537851, Judge Schofield overturned an SRO's denial of a
parent's request that the Department directly pay iBrain, but took a different route to that result.
Noting the record's lack of clarity as to the parent's ability to pay, Judge Schofield directed the
parent to provide "evidence" of "inability to pay tuition and other costs," following which the
parent supplied a sworn affidavit stating that "neither [the parent] nor her family had the
financial means to front these costs." *Id.* at \*5–6. Exercising her authority under the judicial
review provision, Judge Schofield ordered direct payment, finding that "[t]he IDEA's broad
grant of discretion and the circumstances of th[at] case—including Plaintiffs' financial status, the
time elapsed between when services were provided to [the child] and adjudication of Plaintiffs'
claim and Defendant's undisputed obligation to cover the outstanding costs—support[ed] an
award of direct tuition payment." *Id.* at \*6. She did "not reach the question of whether parents

must show their inability to pay in order to receive an award of direct tuition funding." *Id.* at *5; *accord. Erde*, 2022 WL 18461297, at *9–10 (direct payment recommended after parents, at magistrate judge's direction, submitted evidence of their combined adjusted gross income, expenses, and Medicaid coverage), *report and recommendation adopted*, 2023 WL 373156; *cf. Brock ex rel. S.B. v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 8673, 2015 WL 1516602, *4 (S.D.N.Y. Mar. 31, 2015) (Daniels, J.) (awarding direct payment on basis of, *inter alia*, parent's receipt of supplemental security income payments).

The assembled case law thus can be synthesized as follows.  There is a wide recognition in this District that, although the IDEA references only the remedy of reimbursement, § 1415(i)(2)(C)(iii) empowers courts, where "appropriate," to order direct payment, to the service providers, of tuition and fees for related services for a child whom the educational agency had denied a FAPE.  There is not, however, consensus as to the boundaries of judicial discretion under that provision, including whether a parent must show financial hardship from paying, or a durable legal obligation to pay, before a court may order direct payment in lieu of imposing a reimbursement obligation on the State.  And, as yet, although several courts have tacitly assumed the existence of such authority, there does not appear be case law identifying a statutory basis for an IHO or SRO to order direct payment.[11]

Here, the Moonsammys pursue an order requiring the Department to directly pay iBrain and Sisters, based on the recent decisions like *Ferreira* and *Cohen* that have granted such in the

---

[11] By its terms, § 1415(i)(2)(C)(iii) addresses only the remedial authority of courts.  The courts in this District that have termed "error" denials by state administrative hearing officers of direct payment appear to have done so on the assumption that the administrative officers had, but failed to exercise, the same authority as courts to award direct payment under §1415(i)(2)(C)(iii). *Mondano*, 2024 WL 1363583, at *12; *see also Cohen*, 2023 WL 6258147, at *6; *Ferreira*, 2023 WL 2499261, at *9–10.

absence of a showing of financial hardship. Pls.' Br. at 14–19. The Department argues against direct payment, on the ground that the Moonsammys have not demonstrated that requiring them to pay iBrain and Sisters and then to seek reimbursement would pose a hardship. In his terse explanation for imposing a reimbursement remedy, and not requiring the Department to make such direct payment, SRO Bates stated that:

> there is no evidence in the hearing record regarding the parents' financial resources, such as showing of eligibility for government benefit programs for low-income families that cover food, housing, medical, or other basic living expenses, or a copy of a recent tax return, or other evidence regarding the parents' assets, liabilities, income, or expenses.

AR 32.

On the present record, the Court could overturn the SRO only by adopting the sweeping view that the denial of a FAPE automatically entitles a parent to the direct payment remedy, without ever needing to make an individualized showing that the equities so favor. As the SRO found and as the Moonsammys do not dispute, counsel for the Moonsammys did not make any record of any facts particular to them that supported entry of such an order. The Moonsammys did not adduce any evidence that the statutory reimbursement remedy would work a hardship on them. Indeed, the record is devoid of evidence supporting *any* of the equitable considerations listed by the Second Circuit in *E.M.* bearing on a parent's bid for direct payment. *See* 758 F.3d at 461 (listing "factors" "bear[ing] . . . on the equities of plaintiff's claim for [direct payment] relief"). This Court is unpersuaded that the judicial review provision's authorization of "appropriate' remedies can be deployed categorically—without regard to the circumstances associated with the private school placement at issue—to override the reimbursement remedy that the IDEA repeatedly references. *See* 20 U.S.C. § 1412(a)(10)(C); *cf. E.M.*, 758 F.3d at 453 ("[T]he broad spectrum of equitable relief contemplated under the IDEA encompasses, *in*

*appropriate circumstances*, a direct-payment remedy. Indeed, *where the equities call for it*, direct payment fits comfortably within the *Burlington–Carter* framework . . . ." (emphases added) (citations omitted)).

And there are sound policy justifications, too, for sometimes requiring parents with the ability to pay tuition and associated expenses to do so, subject to a right to seek reimbursement. That arrangement may smoke out excessive charges by the private school or service provider. It may promote greater pricing discipline by such schools and service providers. It may incent parents to question and negotiate other charges that may be outsized. *See, e.g., Mr. & Mrs. A.*, 769 F. Supp. 2d at 429–30 (noting State's valid interest in guarding against risk of "artificially inflated tuition" payment requests stemming from "sham transactions" in which "parents and private schools . . . tacitly underst[and] that, should funding from the public school district not be granted, the parent will be relieved from payment"); *id.* at 428–30 (inquiry into parents' financial ability to "front the costs of private school tuition" is germane, because when parents have the ability to do so, their payment may provide some evidence of the validity of the tuition and other charges sought); *A.R.*, 2013 WL 5312537, at *8–11 (similar); *see also E.M.*, 758 F.3d at 461 (inviting district court to examine "whether there was any fraud or collusion in generating (or inflating) the tuition to be charged to the Department"). Indeed, a recent case has raised just such concerns about the very third parties whom the Moonsammys here ask the Department to directly pay: iBrain and Sisters. *See Davis v. Banks*, No. 22 Civ. 8184, 2023 WL 5917659, at *5 (S.D.N.Y. Sept. 11, 2023) (Furman, J.) (noting "legitimate concerns about waste, fraud, and abuse" in connection with request to reimburse iBrain and Sisters and that "further factfinding" by hearing officer "may be warranted"); *id.* at *5 n.7.

Regrettably, there appears to have been little if any effort by any participant in the

administrative proceedings in A.M.'s case to develop a factual record that would enable a sound

exercise of judicial discretion under § 1415(i)(2)(C)(iii). IHO Sturges, finding that the

Department had provided A.M. a FAPE, did not consider the parents' financial circumstances or

other factors bearing on their request for direct payment. *See* AR 46. Rather, in the single

paragraph that he termed his "complete set of findings" on this issue, the IHO stated that the

Moonsammys' "predetermination" to enroll A.M. at iBrain "would have warranted a 25%

reduction had tuition been awarded for the 2022-2023 school year." AR 47. SRO Bates's terse

account of his reasons for granting 100% reimbursement did little more than (1) fault the

Moonsammys for not making a record of their income, expenses, assets and liabilities, while (2)

faulting the IHO for discounting the reimbursement remedy by 25% based on his perception that

the Moonsammys had "predetermined" their choice of iBrain. AR 28, 32. In not probing the

equities further, the SRO appears to have viewed the Moonsammys' failure to demonstrate

financial hardship as necessarily fatal to their request for direct payment. *But see E.M.*, 758 F.3d

at 453 (explaining that "*where the equities call for it*, direct payment fits comfortably within the

*Burlington–Carter* framework . . . ." (emphasis added)). Finally, dismayingly, counsel for the

Moonsammys, apparently regarding the direct payment remedy for denial of a FAPE as available

as of right, did not motivate to develop a record that might have assisted their clients on this

point.[12] The result is that the "record of the administrative proceedings," 20 U.S.C.

---

[12] With one exception: the record contains an unsigned document styled as an "affidavit" by
Kemraj Moonsammy which states, without elaboration, that his "family is unable to pay up front
the cost of [A.M.'s] placement." AR 360; *see also* AR 780 ("swear[ing]" or "affirm[ing]" in
testimony before the IHO, that "the content of the affidavit is the truth"). Although this
document is conclusory, it at least suggests the possibility that, had a factual inquiry been
undertaken, the Moonsammys might have been able to show that requiring them to pay iBrain
and Sisters and then seek reimbursement would have posed a financial hardship.

§ 1415(i)(2)(C)(ii), is factually emaciated as to the equities. Lacking evidence and findings, the Court is unable to non-speculatively resolve whether these support awarding the Moonsammys direct payment. *See, e.g.*, *Mondano*, 2024 WL 1363583, at *12 (faulting SRO for failing to "balance [the] parent's financial status against . . . considerations that may legitimately drive a preference for reimbursement as the form of payment").

The Court, however, is unprepared to punish the parents and A.M. for the lapses of their counsel to adequately develop the administrative record below and before this Court.[13] Instead, the Court concludes, "the proper course is to remand for further clarification" on whether the equities support an award of direct payment here. *Davis*, 2023 WL 5917659 at *5 (quoting *Hidalgo*, 2021 WL 2827037, at *5); *see also, e.g.*, *T.L. v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 417, 436 (E.D.N.Y. 2013) ("A court may remand a proceeding when it needs further clarification or does not have sufficient guidance from the administrative agencies."); *N.Y.C. Dep't of Educ. v. V.S.*, No. 10 Civ. 5120, 2011 WL 3273922, at *11 (E.D.N.Y. July 29, 2011) ("[R]emand is appropriate where the district court has received insufficient guidance from state administrative agencies as to the merits of a case."). Section 1415(i)(2)(C)(iii) directs "the court" to "bas[e] its decision on the preponderance of the evidence," but such can only be done on a record that sufficiently ventilates the equitable considerations bearing on the request for direct payment.

Because the Court—unlike the administrative hearing officers seasoned in these matters—is "ill-equipped to address" those considerations "in the first instance," the Court remands this matter to the SRO to develop the record. *F.B. v. N.Y.C. Dep't of Educ.*, 923 F. Supp. 2d 570, 589 (S.D.N.Y. 2013); *T.L.*, 938 F. Supp. 2d at 434 (remanding to SRO "for

---

[13] *See supra* note 1 (observing that multiple courts have expressed concerns regarding parents' representation by BIRG, which was founded by the founder of iBrain), and note 6 (noting that the parties have declined to supplement the record before this Court).

clarification and additional factfinding" where "the administrative record [wa]s unacceptably sparse in detail"). It would be fruitful to develop the record, among other points, as to whether the Moonsammys were contractually obliged to pay the fees assessed by iBrain and Sisters had it been determined that the Department had offered them a FAPE, whether these fees were justifiable, whether the Moonsammys would have been able to pay the fees assessed (or, if excessive, reasonable fees for these services), and what the consequences to the Moonsammys would have been of obliging them first to pay iBrain and Sisters and thereafter to seek reimbursement. The SRO should consider whether the assembled evidence equitably supports a remedy of reimbursement as opposed to direct payment. *E.M.*, 758 F.3d at 461; *Mr. & Mrs. A.*, 769 F. Supp. 2d at 429–30. In all events, the SRO should heed the Second Circuit's instruction in *E.M.* to consider "the equities of [the parents'] claim for relief," and the factors listed therein as germane to those equities, 758 F.3d at 461, and to draw upon his expertise in education policy to weight these factors, *T.L.*, 938 F. Supp. 2d at 436. "Remand by the SRO to the IHO or other action at the state level is not precluded" by this decision. *Id.* at 437; *D.F. v. City Sch. Dist.*, No. 15 Civ. 1448, 2016 WL 1274579, at *14 (S.D.N.Y. Mar. 31, 2016); *Vinluan ex rel. D.V. v. Ardsley Union Free Sch. Dist.*, No. 19 Civ. 6496, 2021 WL 3193128, at *2 (S.D.N.Y. July 27, 2021); *see also* N.Y. Educ. Law § 4404(2).

Accordingly, the Court remands the Moonsammys' direct payment claim to the SRO for clarification and further development of his order not inconsistent with this opinion.

### B. Nursing Services

The Moonsammys next argue that SRO Bates erred in omitting, from the reimbursement award, funding for one-to-one nursing services at iBrain for the 2022–23 school year. Because A.M. has medical needs requiring individual attention from a nurse during the school day, and

because she could not be expected to benefit from special education without such care, they argue, the IDEA required the SRO to provide funding for one-to-one nursing services.

Under the IDEA, a FAPE comprises both "special education" and "related services." 20 U.S.C. § 1401(9). "Related services" are "the support services required to assist a child to benefit from" educational instruction tailored to the unique needs of a child with a disability. *Endrew F.*, 580 U.S. at 390–91 (internal quotation marks omitted); *see W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 149 (2d Cir. 2019). The Act defines "related services" to include school nursing services. 20 U.S.C. § 1401(26)(A); 34 C.F.R. § 300.34(a) (same).

At the outset, the Department urges the Court to disregard the Moonsammys' nursing services claim. It argues that the Moonsammys failed to raise that claim in the Complaint and therefore cannot pursue it at summary judgment. Defs.' Br. at 9 n.1. The Department's factual premise is wrong. Although the term "one-to-one nursing services" does not appear in the Complaint, it sought "funding," under the IDEA, "for A.M's private school educational placement/program (iBrain), including the cost of tuition, *related services*, and special transportation services." Complaint at 16 (prayer for relief) (emphasis added); *see also id.* ¶¶ 86, 114. School nursing services constitute the type of "related services" contemplated by the IDEA, 20 U.S.C. § 1401(26), a point the Department does not dispute. And the Moonsammys' submissions throughout the administrative proceedings, in emphasizing A.M.'s documented medical needs, put the Department on notice that nursing services were among central "related services" for which the Moonsammys were seeking funding. *See, e.g.*, AR 19 (SRO), 46 (IHO), 115 (due process complaint). The Court thus finds that the Moonsammys raised and preserved their claim for nursing services.

Of central importance to this issue, the Department's failure to "consider" one-to-one nursing services for A.M. was—as the Moonsammys rightly note—the basis of SRO Bates's determination that she had been denied a FAPE. *Id.* at 26. The SRO began by observing that New York State guidance documents in effect at the time A.M.'s IEP was prepared called for the CSE to "weigh the factors of both the student's individual health needs and what specific school health and/or school nurse services are required to meet those needs." *Id.* at 20. The factors to be weighed included the "complexity of the student's individual health needs and level of care needed during the school day to enable the student to attend school and benefit from special education"; the "qualifications required to meet the student's health needs"; and the "extent and frequency the student would need [sic] the services of a nurse (*e.g.*, portions of the school day or continuously throughout the day)." *Id.* The SRO then reviewed A.M.'s "diagnoses" of spastic quadriplegic cerebral palsy, hypotonic infantile spasm, microcephaly, Lennox Gastaut Syndrome, and cortical visual impairment (CVI), *id.* at 20–21, and noted that she presented with "absent and myoclonic seizures approximately three to four times per day," *id.* at 24. The SRO found evidence that A.M. had "medical needs . . . warrant[ing] consideration of a 1:1 nurse," including to "observe aspiration precaution, monitor food and fluid intake, observe seizure precautions, obtain seizure action plan and necessary medications, monitor seizure activity, and monitor for signs and symptoms of low oxygen levels or low heart rate." *Id.* at 25. The SRO further noted that A.M. "was recommended for special transportation with accommodations in part because she required medical and/or healthcare treatments or procedures during the school day and at home." *Id.* Finding "problematic" the Department's explanation for excluding nursing services—that the Moonsammys had failed to submit medical forms to another state office—the SRO concluded that the "fail[ure] to consider 1:1 nurse services in light of the

student's documented medical needs" amounted to "a denial of a FAPE" for the 2020–21, 2021–22, and 2022–23 school years. *Id.* at 26. On that basis, the SRO reversed the IHO's determination that the Department had offered A.M. a FAPE. *Id.*

Notwithstanding this finding, the SRO's order furnishing relief is silent as to reimbursement for nursing services. *See id.* at 34–35. In the conclusion to the order, the SRO stated: "I shall award reimbursement of the iBrain tuition costs for the 2021–22 and 2022–23 school years and reimbursement of transportation costs to and from iBrain for the 2022–23 school year in accordance with this decision." *Id.* at 34. The decretal language that followed stated that reimbursement was to cover the "costs [of] iBrain tuition for the 2021–22 and 2022–23 school years upon the parents' submission to the district of proof of attendance and payment" and "the costs of the student's transportation to and from iBrain for the 2022–23 school year pursuant to the contract that the parent entered into with Sisters Travel upon the parents submission [sic] of proof of payment." *Id.* at 35. Although conceivably the SRO so intended, the order does not state that "tuition reimbursement for iBrain," *id.* at 29, included the total cost of nursing services provided "at iBrain," *id.* 24. At the same time, the SRO's order does not set out a justification for omitting nursing services from the scope of reimbursement. It does not attempt to reconcile the exclusion of nursing services from the remedy with the substance of the order, finding that the failure to consider such services caused A.M. to be denied a FAPE.

The Moonsammys posit that the SRO omitted payment for one-to-one nursing services from the award either because he perceived that the parents had failed to timely submit requisite medical documentation, or because of an "oversight" on his part. Pls.' Br. at 26–27; Pls.' Reply Br. at 20–21. The former theory—that the SRO put the burden on the Moonsammys to furnish documentation—is not persuasive. That is because the the SRO, in finding denial of a FAPE, found

that "the IHO erred in accepting the [Department's] explanation that . . . the parents were required to send documentation to another office for a later determination of whether the student required a 1:1 nurse[.]" AR 26.  SRO Bates stated that the Department and the CSE "failed to appreciate that they were the entities responsible to determine whether the student needed a 1: 1 nurse in order to receive a FAPE and recommend a 1:1 nurse if the student required one."  *Id.*

The Moonsammys' alternative explanation that the order's omission of nursing services from the reimbursement award was an oversight, on the other hand, is plausible.  The Second Circuit recently took note of a similar administrative oversight in an IDEA case, *Scheff v. N.Y.C. Dep't of Educ.*, No. 23-1006-cv, 2024 WL 3982986 (2d Cir. Aug. 29, 2024).  There, "due to an oversight by the IHO, the decretal language of the [IHO's order] did not require the DOE to pay for any nursing expenses for that same time, even though the substance of that order explained that the lack of nursing services was part of the DOE's failure to provide [the student] a FAPE."  *Id.* at *2.  Unlike in this case, however, the IHO there later "issued a corrected order . . . that specifically required the DOE to pay for nursing expenses, as well."  *Id.*

The Court's judgment therefore is to remand to the SRO on this issue, too—to obtain clarification on whether the SRO awarded reimbursement for nursing services.  The Court rejects the Department's lukewarm defense of what it conjectures was a deliberate omission of nursing services from his award.  It depicts the SRO's "exclusion" as "not an error" and as "deserv[ing] deference."  Defs.' Br. at 11; *see, e.g.*, *Rowley*, 458 U.S. at 206.  But the depiction of the SRO as affirmatively deciding to deny such relief is an *ipse dixit* and the lack of a stated justification undermines its argument for deference.  On the contrary, the SRO repeatedly faulted the IEPs for A.M. as inadequate because they *excluded* nursing services.  *Cf. M.H.*, 685 F.3d at 241 ("The

SRO's or IHO's factual findings must be 'reasoned and supported by the record' to warrant deference." (quoting *Gagliardo*, 489 F.3d at 114)).

Remand for clarification is thus in order. *See, e.g.*, *Hidalgo*, 2021 WL 2827037 at *5 (S.D.N.Y. July 7, 2021). The SRO is "uniquely well suited" to interpret his own order and to clarify whether the reimbursement for iBrain tuition is intended to cover one-to-one nursing services for A.M. *D.N. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 9223, 2012 WL 6101918, at *5 (S.D.N.Y. Dec. 10, 2012). If the omission of nursing services was an oversight, the SRO, on remand, should clarify, *inter alia*, the circumstances under which the Department is required to fund the cost of one-to-one nursing services for A.M. at iBrain, including addressing whether the Department's funding obligation is limited to those days A.M. was actually provided such services at iBrain. *See Scheff*, 2024 WL 3982986, at *2 (noting issuance by IHO on remand of corrected order).

The Court therefore remands to the SRO for clarification as to the disposition of the Moonsammys' claim for nursing services.

## C. Independent Educational Evaluation at Public Expense

The Moonsammys next claim that the SRO erred in denying their request that an independent educational evaluation ("IEE") of A.M.—specifically, a neuropsychological evaluation—be conducted at public expense. They contend that a "psychological update" that the Department conducted on March 4, 2022, *see* A.R. 190–91 (the "March 2022 evaluation"), triggered a right to such an IEE, and that the SRO erred in reversing the IHO's grant of one.

The IDEA grants the parents of a child with a disability the right to obtain an IEE of the child, 34 C.F.R. § 300.502(a)(1), which a local educational agency must consider "in any decision made with respect to the provision of FAPE to the child," *id.* § 300.502(c)(1). An

evaluation "means a comprehensive assessment of the child that follows the mandatory procedures outlined in Section 1414 of the IDEA, including assessing the child in all areas of their disability." *D.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 163 (2d Cir. 2020). An IEE is "an evaluation conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child in question." 34 C.F.R. § 300.502(a)(3)(1); *see* 8 NYCRR § 200.1(z).

The IDEA provides for a publicly funded IEE in a "limited circumstance": a parent who "disagrees" with the education agency's "evaluation" of their child has the right to an IEE "at public expense." *D.S.*, 975 F.3d at 158 (citing 34 C.F.R § 300.502(b)(1)). An IEE at "public expense" means that "the public agency either pays for the full cost of the evaluation or ensures that the evaluation is otherwise provided at no cost to the parent." 34 C.F.R. § 300.502(a)(3)(ii). By guaranteeing a publicly funded IEE, the IDEA provides parents with "access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge an adverse evaluation without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 60–61(2005).

34 C.F.R. § 300.502(b) sets out the local educational agency's obligations if a parent "disagrees with an evaluation obtained by the" agency.[14] Once the parent requests an IEE at public expense, the "burden automatically shifts to the agency." *D.S.*, 975 F.3d at 168. "[W]ithout unnecessary delay," the agency must either "[f]ile a due process complaint to request a hearing to show that its evaluation is appropriate," or "[e]nsure that an [IEE] is provided at

---

[14] § 300.5(b)(5) limits the parent to "only one independent educational evaluation at public expense each time the public agency conducts an evaluation with which the parent disagrees."

public expense." 34 C.F.R. § 300.502(b)(2)(i)–(ii). Where a parent requests an IEE, the agency "may ask for the parent's reason why he or she objects to the public evaluation," but it "may not require the parent to provide an explanation and may not unreasonably delay either providing the independent educational evaluation at public expense or filing a due process complaint to request a due process hearing to defend the public evaluation." *Id.* § 300.502(b)(4). In the event the agency pursues a due process hearing and "the final decision is that the agency's evaluation is appropriate," § 300.502(b)(3) provides that "the parent still has the right to an independent educational evaluation, but not at public expense."

The Department does not dispute that the March 2022 evaluation was a comprehensive assessment of A.M., triggering the parents' right to an IEE. *See D.S.*, 975 F.3d at 163. In their due process complaint, the Moonsammys sought "an independent neuropsychological evaluation conducted by a qualified provider of the Parents' choosing at a reasonable market rate." AR 115. They argued that the Department's March 2022 evaluation had "failed to thoroughly assess [A.M.] in all areas of her suspected disability." *Id.* Reversing the IHO's contrary determination, SRO Bates denied the Moonsammys' request for a publicly funded IEE. *Id.* at 34. He acknowledged that they had disagreed with the March 2022 evaluation on the grounds that it "was not sufficiently comprehensive"; "did not use a variety of assessment tools and measures"; and "failed to accurately reflect [A.M.'s] aptitude (when also taking into account her disability)." *Id.* at 33. But he denied their request, finding that the Moonsammys had acted improperly by expressing their disagreement with the evaluation "for the first time in the due process complaint notice." AR 34. Rather, he stated, "the process [under] the IDEA and its implementing regulations" "envisions that a [local educational agency] has an opportunity to engage with the parent on the request for an IEE at public expense outside of due process litigation." *Id.* at 33. If

33

"an unnecessary" "delay should occur as a result" of the agency's engagement with the parents, he stated, the parents may be entitled to a publicly funded IEE, and "at no point does a parent need to file a due process complaint notice to obtain an IEE at public expense." *Id.* at 33–34 (citing *D.S.*, 975 F.3d at 168–69). SRO Bates acknowledged that his denial of the IEE request departed from his "previous approach of allowing the parent to initially disagree with a district evaluation and request an IEE in a due process complaint notice." *Id.* at 33. SRO Bates did not address the substance of the parents' challenge: whether the Department's March 2022 evaluation had been "appropriate." 34 C.F.R. § 300.502(b).

The Moonsammys argue that the SRO erred in inventing a procedural limitation not imposed by the IDEA, its implementing regulations, or the case law. They are correct.[15] The SRO assumed that because the Moonsammys were not required to file a due process complaint to express their disagreement with the Department's evaluation, it was impermissible for them to have used that mechanism to do so. That is wrong. As the Second Circuit has recognized, parents may express their disagreement in a multiplicity of "formal" and informal ways, including in a due process complaint. *D.S.*, 975 F.3d at 169 n.11; *see also Genn v. New Haven Bd. of Educ.*, 219 F. Supp. 3d 296, 317 (D. Conn. 2016) (parent need not "announce in a formalistic manner, 'I, Parent, disagree with this assessment!' to be found to have disagreed in

---

[15] SRO Bates separately stated that the "parents may have delayed sufficiently clear communication of the IEE request for a number of years" or "more likely included the request for an IEE as an afterthought." AR 34. He did not cite evidence for this accusation. Nor, in any event, could his stated rationale justify denying an IEE. A "parent's right to an IEE at public expense ripens each time a new evaluation is conducted." *D.S.*, 975 F.3d at 169–70. Thus, regardless of prior evaluations, the Department's March 2022 evaluation of A.M. gave the Moonsammys a right to an IEE based on their disagreement with that evaluation. Insofar as the due process complaint was filed October 18, 2022, some 7.5 months after the March 2022 evaluation, the SRO's claim that the Moonsammys had delayed "for a number of years" in communicating their disagreement with that evaluation is demonstrably wrong.

substance with the assessment"). In *D.S.*, the parents "first expressed their disagreement" with

the local educational agency's evaluation "by presenting the Board with a draft due process

complaint and then by filing a formal due process complaint shortly thereafter." 975 F.3d at 169

n.11. The Second Circuit did not find any impediment to that approach. It explained that the

IDEA and its implementing regulations do not "prescribe any formal way in which a parent must

disagree with an evaluation." *Id.* (citing *Genn*, 219 F. Supp. at 317). Rather, it stated, "once a

parent disagrees with an evaluation—however that disagreement is expressed—the [agency]

bears the immediate and automatic burden to respond accordingly." *Id.* And, the Circuit noted,

the agency had had a sufficient opportunity to respond after the parents filed their due process

complaint: the agency "filed its own due process complaint, and the two complaints—raising

identical issues—were ultimately consolidated and resolved together," which "render[ed]

harmless any departure from the standard administrative procedures required by the IDEA." *Id.*

That is the case here, too. The IDEA's implementing regulations placed the onus on the

Department, as the local educational agency, to respond once a parent "disagrees" with its

evaluation. 34 C.F.R. § 300.502(b)(1); *see D.S.*, 975 F.3d at 168–69. The Department was

obliged to respond by (1) providing a publicly funded IEE; or (2) defending its evaluation in a

due process hearing; the regulations are equally unequivocal that an agency may ask for, but is

not entitled to, an explanation of the parent's objection to its evaluation. 34 C.F.R. §§

300.502(b)(2)–(4). Both avenues remained open to the Department after the Moonsammys

expressed their disagreement in their due process complaint notice. The Department does not

argue, and the SRO did not find, that the Moonsammys' choice of this more "formal route" to

express their disagreement prevented the Department from providing an IEE at public expense.

*D.S.*, 975 F.3d at 169 n.11. Had the Department done so, the parents' request for an IEE, in any

ensuing due process hearing, would have become moot.[16]  The Department also does not dispute

that it could have defended its evaluation in the due process hearing initiated by the

Moonsammys before IHO Sturges.  *See* AR 47 (IHO's finding that "the [Department] did not

raise any specific objections to an IEE at the hearing").  The Department also remained free to

file its own due process complaint defending its evaluation after receiving the Moonsammys'

due process complaint notice, as the Second Circuit recognized in *D.S.*, 975 F.3d at 169 n.11.

The Department, however, did not avail itself of any of these mechanisms.

The "'deference owed to an SRO's decision depends on the quality of that opinion,' in

particular, where—as here—the SRO and the IHO disagree."  *C.L. v. New York City Dep't of

Educ.*, 552 F. App'x 81, 82 (2d Cir. 2014) (quoting *R.E.*, 694 F.3d at 189).  Here, insofar as the

SRO's determination that the Moonsammys were not entitled to a publicly funded IEE was based

on his perception of "the process envision[ed]" by the IDEA, AR 33, that assessment is not

entitled to deference.  His understanding of the law was not "based on substantially greater

familiarity with the evidence and the witnesses than the reviewing court," and he did not have

superior "institutional competence" on this point.  *M.H.*, 685 F.3d at 244.

Based on its review of the administrative record, the pertinent facts within which are

undisputed, the Court agrees with the IHO that the Department was, and is, required to provide

the Moonsammys with an IEE at public expense.  The IHO recognized the right of a parent "to

have an IEE conducted at public expense if the parent expresses disagreement with an evaluation

conducted by the district and requests that an IEE be conducted at public expense."  AR 47–48

(citing 34 C.F.R. § 300.502(b) and 8 N.Y.C.R.R. § 200.5(g)(1)).  He found that the Department

---

[16] The Department was free to ask the Moonsammys the reason for their disagreement at any
point.  34 C.F.R. § 300.502(b)(4).

did not respond to, much less refute, the Moonsammys' contentions that the agency's March 2022 evaluation of A.M. "was not sufficiently comprehensive"; "did not use a variety of assessment tools and measures"; and "failed to accurately reflect [A.M.'s] aptitude." AR 115. Under these circumstances, the IHO rationally found that the Department had failed to "demonstrate[]" that its evaluation was "appropriate" in light of the concerns raised by the Moonsammys. 34 C.F.R. § 300.502(b). Such entitled the parents to an IEE at public expense.

The Court therefore holds that SRO Bates erred in denying the Moonsammys' request for a publicly funded IEE. The Court enters summary judgment in favor of the Moonsammys on their IEE claim.

## CONCLUSION

For the foregoing reasons, the Court enters summary judgment in favor of the Moonsammys on their claim that the SRO erroneously denied them an IEE at public expense.

The Court denies summary judgment to both parties on the Moonsammys' claims for direct payment and one-to-one nursing services. The Court remands these matters to the SRO for clarification and further development of the record and for supplementation of his order on these points, consistent with the discussion herein. The Court encourages the SRO to complete this process within two months. The Court directs that counsel, upon issuance of a supplemented order by the SRO, forthwith file such order on the docket of this case.

The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 20 and 24.

SO ORDERED.

Paul A. Engelmayer
_____
Paul A. Engelmayer
United States District Judge

Dated: September 23, 2024
      New York, New York