UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CINDY MOONSAMMY et al.,

                       Plaintiffs,

           -v-

DAVID C. BANKS et al.,

                       Defendants.

23 Civ. 10491 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

    Plaintiffs Cindy and Kemraj Moonsammy (the "Moonsammys"), individually and on behalf of their minor daughter, A.M., filed this action against the New York City Department of Education and its Chancellor, David C. Banks (together, the "Department"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. In 2022, after concluding that the individualized education program ("IEP") developed for A.M. by the Department was inadequate, the Moonsammys unilaterally enrolled A.M. in a private school, the International Institute for the Brain ("iBrain").

    The Moonsammys' Complaint sought review of a July 31, 2023 administrative decision of State Review Officer ("SRO") Justyn P. Bates. In brief, they challenged the SRO's decisions (1) awarding reimbursement to the parents of funds they had paid to providers of educational and transportation services to A.M., rather than ordering the Department to directly pay the providers (the "direct payment claim"); (2) declining to make part of the reimbursement award funding for "one-to-one"—i.e., individual—nursing services provided by an outside agency (the "individual nursing services claim"); and (3) denying their request for an independent educational evaluation ("IEE") of A.M. at public expense (the "IEE claim").

In a decision issued September 23, 2024, the Court granted summary judgment to the Moonsammys on the IEE claim. *Moonsammy v. Banks*, No. 23 Civ. 10491 (PAE), 2024 WL 4277521, at *2 (S.D.N.Y. Sept. 23, 2024) ("*Moonsammy I*"). But the Court denied summary judgment to both parties on the direct payment and individual nursing services claims. *Id.* The Moonsammys' counsel, Brain Injury Rights Group ("BIRG"), the Court noted, had forfeited multiple opportunities to develop the evidentiary record as to these issues. *See, e.g., id.* at *10–13. Because, however, the Court was unprepared to punish the Moonsammys (and A.M.) for BIRG's lapses, it remanded these matters to the SRO for further factual development. *See id.* at *12.

On October 25, 2024, SRO Bates issued his decision on remand. Notwithstanding BIRG's failure, once again, to develop the record, the SRO awarded direct payment to the Moonsammys of (1) tuition for the 2021–22 and 2022–23 school years, which included the cost of a school nurse and an individual paraprofessional, and (2) transportation costs for the 2022–23 school year. Dkt. 33-1 at 14. SRO Bates, however, denied the Moonsammys' request for additional funding for individual nursing services, based on a lack of record support. *Id.*

The Moonsammys now challenge the SRO's decision on remand as to individual nursing services. The parties have cross-moved for summary judgment. For the reasons that follow, the Court grants summary judgment to the Department.

I.  **Background**[1]

The Court assumes familiarity with the factual and procedural background relevant to this controversy, which is set out in detail in *Moonsammy I*, 2024 WL 4277521, at *1–5. The

---

[1] This factual account is drawn from the parties' submissions in support of and in opposition to the Moonsammys' motion for summary judgment as to individual nursing services, Dkt. 38 ("Moonsammys Br."), and the Department's cross-motion for summary judgment, Dkt. 39

2

following summary is limited to the facts necessary for assessment of the discrete issue presented here.

### A.     A.M.'s Relevant Educational History

A.M. is a "child with a disability" under the IDEA. 20 U.S.C. §1401(3)(A)(i) (listing covered disabilities). Her neurological and physical disabilities include cerebral palsy, severe visual impairment, and a form of epilepsy known as Lennox-Gastaut Syndrome, which causes seizures three to four times a day. AR 20, 37. A.M. is non-ambulatory and non-verbal. *Id.* at 37. She requires one-to-one assistance to participate in classroom activity and to attend to her basic needs. *Id.*

In August 2021, A.M.'s Committee on Special Education ("CSE") provided the Moonsammys with an IEP for A.M.'s first year of school. It recommended a class with 12 students, one teacher, and three teaching assistants (a "12:1:3 classroom"). In March 2022, the Moonsammys rejected the Department's proposed placement and determined to enroll A.M. at iBrain. *Id.* at 194–95.

In or around May 2022, A.M. began kindergarten at iBrain for the 2022–23 extended school year. *Id.* at 543. On May 27, 2022, A.M.'s CSE convened again, and adopted substantially similar recommendations to the preceding IEP, placing A.M. in a 12:1:4 classroom. *Id.* at 43, 264. The Moonsammys decided to keep A.M. at iBrain, where she has remained since. *Id.* at 357.

---

("Department Br."), and the administrative record from the proceedings before the state administrative officers and attached exhibits, Dkt. 16 ("AR"), including, *inter alia*, the transcript from the hearing before the IHO; the written decision of the IHO; and the written decision of the SRO. For exhibits and briefs with both internal and Bates-stamped numbering, the Court cites the Bates-stamped page numbers.

3

**B.** **Procedural History**

    **1.** **Prior Administrative Proceedings**

On October 18, 2022, the Moonsammys filed a due process complaint with the Department, in which they sought an order directing the Department to fund the costs of A.M.'s enrollment at iBrain and related services. *Id.* at 106 (the "due process complaint"). The due process complaint alleged that several aspects of A.M.'s IEPs had left her without a free appropriate public education ("FAPE") since August 2020, including her placement in a 12:1:4 classroom, *id.* at 111–12, limited wheelchair access at the proposed school location, *id.* at 112–13, and the failure to recommend a one-to-one nurse for A.M., *id.* at 115. The due process complaint also alleged that A.M.'s unilateral placement at iBrain was appropriate to address her "academic, physical, and social/emotional needs." *Id.* at 116. The Moonsammys sought an order requiring the Department to pay A.M.'s tuition and transportation expenses directly to iBrain and Sisters, respectively, and to fund an IEE for A.M. *Id.* at 117.

On April 27, 2023, after two days of hearings and live testimony from five witnesses, IHO Philip P. Sturges held that the Department was not required to fund A.M.'s private school placement at iBrain. *See id.* at 38, 48. The IHO applied the familiar *Burlington-Carter* framework. *Id.* at 44.[2] Under that framework, parents who have unilaterally placed their child in private school are "entitled to reimbursement if (1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement is appropriate to meet the child's needs, and (3) equitable considerations favor reimbursement." *See E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 451–55 (2d Cir. 2014).

---

[2] *See Sch. Comm. of the Town of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985); *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993).

4

As to the first *Burlington-Carter* prong, IHO Sturges found that the Department had offered A.M. a FAPE. AR 44–46. In light of that finding, IHO Sturges noted, "it [wa]s not necessary" to reach the second and third prongs, but he did so "to provide the parties with a complete set of findings" in the event of appellate reversal on the first prong. *Id.* at 46–47. As to the second prong, IHO Sturges would have held iBrain an "appropriate placement" for A.M.; and as to the third, IHO Sturges would have found that equitable considerations warranted a 25% reduction in the tuition reimbursement award for the 2022–2023 school year. *Id.* at 47.[3]

Both parties appealed. *Id.* at 12.

On July 31, 2023, SRO Bates issued a decision sustaining both appeals in part. *Id.* at 12. He reversed the IHO's determination on the first *Burlington-Carter* prong, holding that the Department, by failing "to consider [one-to-one] nurse services in light of" A.M.'s "documented medical needs," had deprived A.M. of a FAPE. *Id.* at 26. As to the second prong, the Department's failure to "challenge the IHO's determination" that iBrain was an appropriate unilateral placement for A.M., the SRO found, left that determination "final and binding on the parties." *Id.* at 27. With respect to the third prong, SRO Bates disagreed with the IHO's finding that the parents' "predetermination" to send A.M. to iBrain warranted a reduction in the amount of tuition reimbursement. *Id.* at 28–29. Based on these findings, SRO Bates awarded the Moonsammys reimbursement for "iBrain tuition costs for the 2021–22 and 2022–23 school years" and "transportation costs to and from iBrain for the 2022–23 school year." *Id.* at 34.[4]

---

[3] As to the Moonsammys' request for an IEE, IHO Sturges ordered the Department to fund a neuropsychological IEE by an evaluator selected by the Moonsammys. *Id.*

[4] SRO Bates, disagreeing with the IHO, found that the Department was not required to fund an IEE. *Id.* at 24.

5

### 2. The Court's Summary Judgment Decision

On November 30, 2023, the Moonsammys filed a complaint in this Court, seeking review of aspects of SRO Bates's order. Dkt. 1 (Complaint). They challenged the SRO's decisions (1) ordering the Department to reimburse the parents for their expenditures for A.M.'s tuition and transportation, rather than ordering it to directly pay iBrain and Sisters; (2) declining to award funding for one-to-one nursing services at iBrain; and (3) denying their request for an IEE at public expense. The Department filed an Answer but did not cross-appeal. Dkt. 9.

On April 17, 2024, the Moonsammys filed a motion for summary judgment, Dkt. 20, and a memorandum of law in support, Dkt. 21. After briefing,[5] the Court, in a decision issued September 23, 2024, granted summary judgment to the Moonsammys on the IEE claim. *Moonsammy I*, 2024 WL 4277521, at *2. But the Court denied summary judgment to both parties on the Moonsammys' claims for (1) direct payment and (2) one-to-one nursing services. *Id.* Citing, *inter alia*, BIRG's failure to adequately develop the evidentiary record, the Court remanded these matters to the SRO. *See id.; see also id.* at *12 ("The Court, however, is unprepared to punish the parents and A.M. for the lapses of their counsel to adequately develop the administrative record below and before this Court."). On the direct payment issue, the Court directed the SRO to consider the equities bearing whether to order the Department (1) to directly pay iBrain and Sisters for, respectively, tuition and transportation services or (2) to reimburse the Moonsammys for their actual expenditures for such services, and to explain which the equities, including the Moonsammys' financial circumstances, favor. *See id.* at *2. On the nursing services issue, the Court explained, the SRO was to consider whether, under his order dated July

---

[5] On June 6, 2024, the Department filed a cross-motion for summary judgment and an opposition to the Moonsammys' motion, Dkt. 24, along with a memorandum of law in support, Dkt. 25. On July 12, 2024, the Moonsammys filed an opposition to the Department's motion and a reply to the Department's opposition, Dkt. 29. On July 23, 2024, the Department replied. Dkt. 30.

6

31, 2023, the Department has an obligation to fund one-to-one school nursing services for A.M. and the scope of any such obligation. *See id.*

### 3. Administrative Proceedings Following Remand

On October 25, 2024, SRO Bates issued his decision on remand. Dkt. 33-1 at 1. The SRO noted, at the outset, that he had given the parties an opportunity to submit additional documentary evidence and briefing on remand, but that BIRG had not appeared. *Id.* at 4–5. The SRO stated:

> Although the parents' counsel was copied on the district's communications with the Office of State Review and was served by both mail and email with the district's supplemental briefing upon remand, the parents failed to respond, submit additional evidence on the issue of direct funding and have not submitted any statement regarding the issues remanded. Notwithstanding that point, I have conducted an impartial reexamination of the issues remanded by the District Court to the best of my ability.

*Id.* at 5. As a result, there remained little to no evidence in the record as to the equities bearing on the Moonsammys' claim for direct payment, including whether the Moonsammys were contractually obliged to pay the fees assessed by iBrain and Sisters had it been determined that the Department had offered them a FAPE, whether these fees were justifiable, whether the Moonsammys would have been able to pay the fees assessed (or, if excessive, reasonable fees for these services), and what the consequences to the Moonsammys would have been of obliging them first to pay iBrain and Sisters and thereafter to seek reimbursement. *Cf. Moonsammy I*, 2024 WL 4277521, at *10–12 (instructing SRO to develop record as to such factors). Even so, the SRO explained, he was "reluctant to . . . punish," in effect, "an innocent child with significant disabilities" (A.M.) for BIRG's dereliction. Dkt. 33-1 at 14. The SRO found that the equities favored direct payment to the Moonsammys of (1) tuition for the 2021–22 and 2022–23 school years, and (2) transportation costs for the 2022–23 school year. *Id.* As to transportation costs for the 2021–22 school year, the SRO awarded reimbursement, upon proof of payment by

7

the parents for the transportation. *Id.* SRO Bates denied funding for one-to-one nursing services at iBrain, finding "no reliable evidence" that the Moonsammys had agreed to separately pay for such, on top of the tuition payment to iBrain. *Id.*

### 4. The Moonsammys' Ensuing Appeal

On December 16, 2024, the Moonsammys filed a letter notifying the Court of SRO Bates's decision on remand and requesting that the Court set a briefing schedule governing their challenge to the SRO's decision as to individual nursing services. Dkt. 33 at 4. The letter claimed that BIRG had been unaware of the administrative proceedings on remand. It accused SRO Bates of having "unreasonabl[y]" sent communications on this matter to an attorney for plaintiffs (Ataur Raquib, Esq.) whom BIRG stated had ceased to be employed by BIRG. *Id.* at 1–3. And it accused the SRO of being "disinterested in gathering more evidence and facts to clarify the issues on remand and make a just decision . . . ." *Id.* at 2. The Moonsammys did not, however, seek to submit any additional evidence as to individual nursing services, *see* 20 U.S.C. § 1415(i)(c)(iii); they sought only "to brief this issue as an appeal to the Court." *Id.* at 4.

Given the gravity of BIRG's allegations, the Court directed the Department to file a response on the docket, by January 3, 2025, addressing, *inter alia*, whether (1) BIRG had ever notified the Department that Ataur Raquib, Esq., was no longer associated with BIRG and directed it henceforth to direct communications to Rory J. Bellantoni, Esq., or other counsel associated with BIRG; and if so, (2) how, when, and by whom. *See* Dkt. 34.

On January 2, 2025, BIRG filed a further letter, authored by Bellantoni. Dkt. 35. BIRG's letter backtracked. *Id.* at 1–2. It effectively retracted its accusation that the SRO had erred in communicating with Raquib. *Id.* In what it termed a "clarif[ication]," it stated that a reason why BIRG had neglected to participate in the proceedings on remand was a lapse by Bellantoni. *Id.* at 1–3; *see also id.* at 3 n.5 ("[T]he outcome . . . could have . . . been different

8

had [Bellantoni] been more proactive in following up with the SRO or DOE's counsel regarding the Court's remand.").

On January 3, 2025, the Department responded. Dkt. 36.

On January 28, 2025, the Court set a briefing schedule for the Moonsammys to seek review of SRO Bates's decision on remand. Contrary to BIRG's misleading representations to the Court, the Court found, BIRG had been on "full notice" of the proceedings on remand and had had every opportunity to advocate the Moonsammys' cause in those proceedings, but had forgone the opportunity to do so. Dkt. 37 at 5. The Court noted that SRO Bates had mailed the letter, dated September 27, 2024, in which he set a briefing schedule for the proceedings on remand, to BIRG's offices at 300 East 95th Street, Suite 130, New York, NY 10128. Dkt. 36 at 2; *see also* Dkt. 33-1 at 5. And, the SRO had mailed his October 25, 2024 decision to BIRG's offices. Dkt. 36 at 2. Further, the Court noted, BIRG had never notified the Department that Raquib was no longer associated with BIRG or instructed it henceforth to direct case-related communications to Bellantoni. Dkt. 37 at 4. In all events, the Court found, BIRG independently had notice of the proceedings on remand because Bellantoni and another lawyer associated with BIRG, Daniela Jampel, Esq., received an ECF notification on September 24, 2024 of this Court's decision on summary judgment, which directed further factual development on remand. *See id.* at 5 (citing *Moonsammy I*, 2024 WL 4277521, at *17). The Court stated that it was not prepared to subject the Department and the Office of State Review to further delay and duplication of effort due to BIRG's failure to act with reasonable diligence. *Id.*; *cf. Ferreira v. Aviles-Ramos*, 120 F.4th 323, 332 (2d Cir. 2024) (*Burlington-Carter*'s third step "incorporate[s] the deeply rooted principle that no man may take advantage of his own wrong" (quoting *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959)) (cleaned up)).

9

On February 4, 2025, the Moonsammys moved for summary judgment as to the individual nursing services issue. Dkt. 38. On February 11, 2025, the Department opposed and cross-moved for summary judgment on this point. Dkt. 39.

## II. Discussion

### A. Legal Framework

The IDEA offers federal funds to States in exchange for a commitment to provide a FAPE to all children with disabilities. 20 U.S.C. § 1412(a)(1)(A); *see also Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017). A FAPE should "emphasize[] special education and related services designed to meet the unique needs" of a child with a disability and "prepare" the child "for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). "Related services" are "the support services required to assist a child to benefit from" educational instruction tailored to the unique needs of a child with a disability, including school nursing services. *Endrew F.*, 580 U.S. at 390–91 (internal quotation marks omitted); *see W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 149 (2d Cir. 2019); *see also* 20 U.S.C. § 1401(26)(A) (listing nursing services).

The Act requires the local educational agency to develop an IEP for each child that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311 (1988); *see* 20 U.S.C. § 1414(d)(1)(A); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 415 (2d Cir. 2009).[6]

---

[6] "Local educational agency" means "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city . . . ." 20 U.S.C. § 1401(19)(A).

10

The IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew*, 580 U.S. at 399. It must be calculated to provide an "appropriate education, not one that provides everything that might be thought desirable by loving parents." *Navarro Carrillo v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 2639, 2023 WL 3162127, at *3 (2d Cir. May 1, 2023) (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 127 (2d Cir. 1998)).

When a parent believes that the State has failed to offer her child a FAPE, the parent may file a due process complaint and attend a hearing before an IHO. *See* 20 U.S.C. § 1415(b)(6); N.Y. Educ. Law § 4404(1). Such a complaint initiates an "administrative challenge unrelated to the concept of constitutional due process." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). If the parent's concerns are not resolved at a "[p]reliminary meeting," 20 U.S.C. § 1415(f)(1)(B)(i), the matter proceeds to a hearing before the IHO, *id.* § 1415(f)(1)(A); *see also id.* § 1415(f)(3)(A)(i), who must "determin[e] . . . whether the child received a [FAPE]," *id.* § 1415(f)(3)(E)(i); *see also* N.Y. Educ. Law § 4404(1)(a). The IHO's decision is appealable by either party to an SRO, who must "conduct an impartial review" of the IHO's "findings and decision." 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(2).

"Any party aggrieved by" the SRO's decision "ha[s] the right" to seek judicial review by filing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A); *see also* N.Y. Educ. Law § 4404(3)(a). "Though the parties in an IDEA action may call the procedure a motion for summary judgment, the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005) (alterations and internal quotation marks omitted).

## B.     Application

Following years of litigation, including three state administrative rulings and this Court's summary judgment decision, the parties' dispute has narrowed to a single issue: whether the Moonsammys are entitled to additional reimbursement for individual nursing services provided to A.M. at iBrain (on top of funding for iBrain tuition), under the third prong of *Burlington-Carter*.[7] This prong requires the Court to "determine the appropriate amount of reimbursement" based on its "consideration of the equities." *A.P. v. N.Y.C. Dep't of Educ.*, No. 22-2636, 2024 WL 763386, at *2 (2d Cir. Feb. 26, 2024). The Moonsammys already have been awarded funding for (1) tuition at iBrain, which includes the cost of a "school nurse" and an "individual paraprofessional," and (2) transportation services. SRO Bates, however, denied them additional funding for one-to-one nursing services.

The Moonsammys argue that the SRO erred in so holding. They challenge, centrally, the SRO's factual finding that there is "no reliable record evidence" that the Moonsammys agreed to pay for A.M. to receive one-to-one nursing services at iBrain. The Department counters that this factual finding is entitled to deference. And, the Department argues, even were the record reviewed *de novo*, the equities do not support awarding reimbursement to the Moonsammys as to individual nursing services.

The Department is correct. The Court has considered the entire record *de novo* and independently balanced the equities.[8] Having done so, the Court is in wholesale agreement with

---

[7] As noted, the *Burlington-Carter* test looks to "(1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the child's needs; and (3) a consideration of the equities." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014).

[8] The parties' disagreement as to the degree of judicial deference due SRO Bates's decision is immaterial, because the Court would uphold that decision even on a *de novo* review of the

12

the SRO's conclusion that the Moonsammys' claim to have incurred the cost of one-to-one nursing services lacks support in the record. *See* 20 U.S.C. 1415(i)(2)(C)(iii) (directing the court to "bas[e] its decision on the preponderance of the evidence").

Relevant here, Section 1412(a)(10)(C)(ii) of the IDEA authorizes "a court or a hearing officer" to "require the agency to reimburse the parents for *the cost of*" private school enrollment upon a finding "that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added); *see also, e.g., Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015) ("[T]he parents may enroll the child in a private school and seek *retroactive reimbursement* for the cost of the private school from the state." (emphasis added)). Thus, the statute "textually presupposes that the parents had incurred those costs." *Moonsammy I*, 2024 WL 4277521, at *7.

The Moonsammys' submissions fall well short of establishing that they have incurred costs as to individual nursing services. *See* AR 325, 803; Moonsammys Br. *passim*. On the contrary, the record evidence undermines their claim to have paid, or agreed to pay, for such services. A.M.'s enrollment agreement with iBrain—on which the Moonsammys' funding request is premised—expressly *disclaimed* that the school would provide "any individual nursing services." AR 325 (the "enrollment agreement"); *see also id.* at 348. The next provision eliminates any doubt: One-to-one nursing services are not among the eight distinct "related services" enumerated in the agreement. *See id.* at 325–26. It outlines, for each related service to be provided at iBrain, the duration, the frequency, and hourly rate charged. *See id.* But the agreement is conspicuously silent as to individual nursing services. *See* Dkt. 33-1 at 13 (SRO

---

record. *Cf. Ferreira*, 120 F.4th at 332 ("[T]he 'substantial deference' that the IDEA requires for matters of educational policy is inapplicable to the equitable balancing called for at the third step of the Burlington/Carter test.").

13

order noting "deafening silence" from the Moonsammys as to individual nursing services). Indeed, the Director of Special Education at iBrain, Tiffany Semm, testified that iBrain did *not* employ nurses capable of providing one-to-one services. AR 803. Consequently, if A.M. had received such services, Semm testified, a nurse would have to be "assigned from an outside agency." *Id.* Semm, however, could not identify any nurse or "outside agency" that had provided one-to-one services to A.M. *Id.* And there is no document in the record evincing any agreement between the Moonsammys and the outside agency (or, for that matter, any other entity) for the provision of the individual nursing services. *Cf. E.M.*, 758 F.3d at 459 ("E.M. has made an adequate showing, based on the unambiguous language of the enrollment contract, that she is obligated to pay . . . tuition to the [private school]."). Nor have the Moonsammys suggested that they entered into an oral agreement that established an obligation to pay for these services. Strikingly, the Moonsammys have not come forward—to date—with the name of the agency that supposedly provided the one-to-one nursing services.

The Moonsammys, at bottom, seek additional funding based on nothing more than their say-so. That is not enough to impose such a funding responsibility on the Department. *See* 20 U.S.C. 1415(i)(2)(C)(iii) (court-ordered relief must be "bas[ed] . . . on the preponderance of the evidence"); *see also, e.g., de Paulino v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 222, 2019 WL 1448088, at *3 (S.D.N.Y. Mar. 20, 2019) (enrollment agreement substantiated parents' obligation to pay service provider), *aff'd*, 959 F.3d 519 (2d Cir. 2020); *Mr. & Mrs. A. ex rel. D.A. v. N.Y.C. Dep't of Educ.*, 769 F. Supp. 2d 403, 411 (S.D.N.Y. 2011) (same); *A.R. ex rel F.P. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 4493, 2013 WL 5312537, *2 (S.D.N.Y. Sept. 23, 2013) (same).

The Moonsammys respond that certain statements in A.M.'s May 2022 IEP, "taken" from a report prepared by iBrain, can be read to "justify" reimbursement for individual nursing services. Moonsammys Br. at 3 (citing AR 211); *see also* AR 266, 357. These references, the Moonsammys argue, indicate that A.M. utilized the services of a nurse at iBrain. That argument misses the mark. The isolated (and oblique) references to nursing services in the IEP do not shed light on whether the Moonsammys agreed to pay a *separate* fee for individual nursing services on top of tuition due iBrain. Still less do they reveal the nature of those services; the duration and frequency with which they were provided; the identity of the provider; or the terms of payment. The lack of specificity as to the scope of nursing services supposedly provided to A.M. is particularly problematic because, as the Department notes, the record reflects that A.M. was absent from school for extended periods. *See* AR 24, 639, 784–85; Department Br. at 2. Moreover, in an act of seeming obfuscation, neither the parents nor the school's representative in the administrative proceedings, Semm, could, or would, identify the provider of the individual nursing services. *See* AR 803. The stray references to nursing services in the IEP on which the Moonsammys peg their bid for additional reimbursement are far too slender a reed to support such an award. And they are also easily discredited as self-serving insofar as they appear in a portion propounded by iBrain, based, *inter alia*, on Semm's testimony and the contrary terms of the iBrain enrollment agreement. *See* Dkt. 33-1 at 12 (SRO's order noting gaps in Semm's testimony); Moonsammys Br. at 3 ("Much of the information . . . came from iBrain, its staff, and the [Moonsammys]."); *see also, e.g., Neske v. N.Y.C. Dep't of Educ.*, No. 22-2962, 2023 WL 8888586, at *2 (2d Cir. Dec. 26, 2023) (district court properly relied on IHO's and SRO's findings that testimony "lacked credibility"); *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 383 (2d Cir. 2003) (courts should not make "subjective credibility assessment[s] . . . in direct

15

contradiction of the opinions of state administrative officers who had heard the same evidence" (internal quotation marks omitted)); *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 241 (2d Cir. 2012) (counseling deference to SRO's factual findings if "reasoned and supported by the record" (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 114 (2d Cir.2007)); *cf. Bd. of Educ. v. Rowley*, 458 U.S. 176, 179 (1982) ("[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." (citing predecessor of 20 U.S.C. 1415(i)(2)(C)(iii)).

The assembled record thus does not come close to supporting an award of additional funding for individual nursing services. As this and other courts have recognized, the State has a valid interest in guarding against the risk of "artificially inflated" payment requests stemming from "sham transactions" in which parents and service providers "tacitly underst[and] that, should funding from the public school district not be granted, the parent will be relieved from payment." *Mr. & Mrs. A.*, 769 F. Supp. 2d at 429–30; *E.M*, 758 F.3d at 461; *Moonsammy I*, 2024 WL 4277521, at *11 (same); *A.R.*, 2013 WL 5312537, at *8–11 (similar); *see also Davis v. Banks*, No. 22 Civ. 8184, 2023 WL 5917659, at *5 (S.D.N.Y. Sept. 11, 2023) (emphasizing "legitimate concerns about waste, fraud, and abuse" as to funding for related services at iBrain). The Moonsammys have not supplied even basic facts, let alone proof, as to the individual nursing services for which they now seek reimbursement. The barren quality of their showing, including failing to demonstrate the fee arrangement if any with the service provider, invites concern "whether there was any fraud or collusion in generating (or inflating) the [fees] to be charged to the Department," *E.M*, 758 F.3d at 461, and prevents the Court from "smok[ing] out excessive charges by the . . . service provider," *Moonsammy I*, 2024 WL 4277521, at *11; *see*

16

*also Ferreira*, 120 F.4th at 332 (*Burlington-Carter*'s third step, in substance, "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief" (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach.* Co., 324 U.S. 806, 814 (1945)) (cleaned up)).

That assessment accords with the SRO's well-reasoned decision. *See Ferreira*, 120 F.4th at 332–33 ("[C]ourts are of course free to consider an IHO and/or SRO's views of the equities for their 'power to persuade.'" (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))). Based on a thorough review of the record, SRO Bates found the Moonsammys' bid for payment for nursing services shot through with factual holes: "[A]bsent from the hearing record [i]s an agreement or contract with any agency providing the student 1:1 nursing services, whether the services were provided to the student and if so, the frequency and duration of the services, and the actual nursing services provided to the student." Dkt. 33-1 at 12. Thus, the SRO concluded, "there was no reliable evidence regarding the provision of unilaterally obtained 1:1 nursing services for the student by iBrain or anyone else." *Id.* at 14.[9] SRO Bates also denied the claim on an independent state procedural ground: the Moonsammys' failure to "separately" enumerate and "set forth" the individual nursing services claim in their request for review of the IHO's

---

[9] The Moonsammys' reliance on *Hidalgo v. New York City Department of* Education, No. 20 Civ. 98, 2021 WL 2827037 (S.D.N.Y. July 7, 2021), is misplaced. *Hidalgo* did not hold, as the Moonsammys claim, that the SRO erred in considering whether the parents had a legal obligation to pay tuition to the private school, under prong three of *Burlington-Carter*. Rather, it held, narrowly, that the SRO was not bound by the IHO's finding on that issue. *Id.* at *4. As a result, the court there instructed the SRO to "examine the record to make his own determination or seek additional evidence, [which] included the Enrollment Contract." *Id.* SRO Bates did just that here.

17

decision. *Id.* at 13 (citing 8 NYCRR 279.8(c)(2), (4) and 8 NYCRR 279.4(a)); *see* AR 65–69 (not specifically identifying one-to-one nursing services among issues for review).[10]

In sum, the record evidence does not support overturning the SRO's decision. That is so notwithstanding the Court's solicitude for the Moonsammys—and A.M.— in this litigation. Precisely to give the Moonsammys an additional opportunity to develop the record, the Court remanded to the SRO. Yet the Moonsammys' counsel did not avail themselves of such. The SRO noted:

> Although [BIRG] was copied on the district's communications with the Office of State Review and was served by both mail and email with the district's supplemental briefing upon remand, the parents failed to respond, submit additional evidence on the issue of direct funding and have not submitted any statement regarding the issues remanded.

*See* Dkt. 33-1 at 5. BIRG thereby squandered the opportunity (had the facts so permitted) to correct its earlier missteps in failing to exercise reasonable diligence in monitoring this litigation. *See* Dkt. 33-1 at 14 (SRO's order lamenting that, even prior to the remand, BIRG, apparently had "h[eld] back" in its "arguments or evidentiary presentations for reasons unknown"); *see also* New York Rules of Professional Conduct 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client. . . . A lawyer shall not neglect a legal matter entrusted to the lawyer."); *Moonsammy I*, 2024 WL 4277521, at *11 ("[D]ismayingly, counsel for the Moonsammys . . . did not motivate to develop a record that might have assisted their clients on this point."). The Moonsammys may have a viable claim against BIRG. But the assembled record leaves them without a basis to claim a right to the cost of one-on-one nursing services.

---

[10] In light of its finding that the Moonsammys' claim is unsupported by the evidence, the Court need not rely upon the SRO's alternative procedural ruling.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: March 7, 2025
       New York, New York